IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REBECCA HARMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-07-327-C |
| | ) | |
| THE STATE OF OKLAHOMA ex rel. | ) | |
| NORTHERN OKLAHOMA BOARD OF | ) | |
| REGENTS d/b/a NORTHERN | ) | |
| OKLAHOMA COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

In this employment action, which was recently removed from state court, Plaintiff asserts a number of claims against her employer, Northern Oklahoma College (through its Board of Regents) (the "College"), and two individual supervisors. Defendants seek dismissal of a number of those claims. Plaintiff has responded.[1]

## STANDARD OF REVIEW

A cause of action is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) only if it appears beyond doubt that the claimant can prove no set of facts in support of her claim that would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In deciding whether the plaintiff fails to state claims on the grounds asserted, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in her favor. See,

---

[1] In a related motion, Plaintiff requests that the Court abstain from exercising supplemental jurisdiction over her state law claims and remand those or that the Court certify specific questions to the Oklahoma Supreme Court. (Dkt. No. 9.) Those issues are mentioned herein, as pertinent, but are more fully addressed by separate order.

e.g., Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991). The Court's role is not to "'weigh potential evidence that the parties might present at trial, but to assess whether [the plaintiff's] complaint alone is legally sufficient to state a claim for which relief may be granted.'" County of Santa Fe v. Public Serv. Co., 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

Qualified immunity arguments are analyzed according to the standard generally applied on a Rule 12(b)(6) motion. Moya v. Schollenbarger, 465 F.3d 444, 455 (10th Cir. 2006). Thus, all well-pleaded facts, as distinguished from conclusory allegations, are treated as true and viewed in the light most favorable to the nonmoving party. Id.

## BACKGROUND

In accordance with this standard, Plaintiff's allegations are accepted as true.[2] Plaintiff is a woman, over the age of 40, who worked as a data technician for the College from September 19, 2001, until approximately January 3, 2007. (Dkt. No. 1 Ex. 2, Pet.) At that time, she was transferred to another position: Coordinator of the Learning Assistance Center. Before her transfer, Plaintiff allegedly endured a number of discriminatory encounters and actions involving her immediate supervisor, Marion Tucker, Vice President of Information Technology, and Tucker's supervisor, Joe Kinzer, the president of the College.

In November 2005, Plaintiff complained to Kinzer that she was being paid at a lesser rate than younger employees and male employees who were performing essentially the same

---

[2] The Court has not considered the evidence attached to Defendants' motion or converted that motion to one for summary judgment.

job duties as she was. Kinzer reportedly promised Plaintiff a $4,000/year raise in her next contract, for the 2006-2007 school year. However, relying on budgetary constraints, Kinzer refused to compensate Plaintiff for past disparities. In December 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age and gender discrimination by the College. In response, Tucker, who had attended the November meeting with Kinzer, reportedly complained that Plaintiff had "'stabbed [Defendant Tucker] in the back'" and "'slit [Plaintiff's] own throat'" and promised to "'protect'" the College and make Plaintiff's life "'miserable.'" (Pet. ¶ 7.) Plaintiff appears to claim that she was subsequently subjected to a hostile work environment that included: being yelled at in front of co-workers; having her computer removed; being unfairly disciplined for mistakes; and having new duties assigned without appropriate training. Plaintiff complained to Randy Taylor, Director of Internet Technology, in January 2006 about these problems.

In August 2006, Plaintiff received her 2006-2007 contract. Plaintiff refused to sign the contract because it did not contain the promised raise. Allegedly in retaliation for her complaint, Plaintiff was presented with a second contract for an amount less than provided in the first. Plaintiff was instructed by persons in the Payroll Department that she would be terminated if she refused to sign the contract. Plaintiff reportedly attempted to complain to Tucker, who refused to discuss the matter and yelled at Plaintiff. When Plaintiff complained to Kinzer, he reportedly stated that older women were not paid the same as younger and/or male employees because "'older women view their jobs as jobs, not careers and we around

her[e] reward career minded people.'" (Pet. ¶ 18.) It is not clear whether Plaintiff signed the second contract, but there is no allegation that she was terminated before her transfer in 2007.

Plaintiff filed a second charge of discrimination with the EEOC in September 2006, for retaliation. Plaintiff claims that she was then subjected to further retaliation, including: Tucker told other employees that she was angry with Plaintiff and to "stay away from Plaintiff;" Plaintiff's computer was again removed; job duties were removed; Plaintiff, but no other employee, was required to write a letter stating why her job was important to her; Tucker and Kinzer refused to communicate with Plaintiff; and computer files that Plaintiff needed to perform her job duties were deleted. (Pet. ¶ 20.)

## DISCUSSION

Defendants assert that the only claims that should survive their motion are those Title VII claims against the College for gender discrimination and retaliation. Specifically, Defendants argue that the following claims should be dismissed: (1) those arising under state law; (2) for equal protection violations by Kinzer and Tucker pursued under 42 U.S.C. § 1983; and (3) the Title VII claim for age discrimination. These claims and the parties' contentions are addressed below.

### I.    Plaintiff's State Law Claims

The Petition contains three "Counts," but asserts additional, discrete claims against particular Defendants. Plaintiff's state law claims include those against the College and Kinzer and Tucker individually for violations of state law prohibiting age and gender

discrimination and those against Kinzer and Tucker individually for interference with her prospective economic relations with the College.

Plaintiff has no private right of action arising strictly under the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. § 1101 et seq. (the "OADA"). The OADA provides only administrative remedies for victims of gender and age discrimination. See Collier v. Insignia Fin. Group, 1999 OK 49, ¶¶ 13-14, 981 P.2d 321, 325-26 (addressing gender discrimination complaints, as compared to claims of discrimination because of a handicap). However, the OADA contains clear indication that Oklahoma public policy prohibits discrimination on the basis of either gender or age. See id.; Saint v. Data Exch., Inc., 2006 OK 59, 145 P.3d 1037. Thus, a Burk-type tort is available to a person, like Plaintiff, who seeks to bring a civil action based on employment discrimination because of her gender and/or age. In Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24, the Oklahoma Supreme Court recognized a narrow public policy exception to the employment-at-will doctrine "restricting the right of employers to discharge at-will employees when that termination is in contravention of a clear mandate of public policy, as articulated by constitutional, statutory or decisional law." McCrady v. Okla. Dep't of Pub. Safety, 2005 OK 67, ¶ 7, 122 P.3d 473, 475.

Defendants make a number of arguments why Plaintiff cannot state a Burk claim on the facts alleged, including that the Petition alleges that Plaintiff was threatened with termination but transferred and not actually terminated. The Court finds that contention determinative. The Burk tort is premised on a wrongful termination, which may include constructive discharge. Collier, 1999 OK 49, ¶ 10, 981 P.2d at 324; Davis v. Bd. of Regents

for Okla. St. Univ., 2001 OK CIV APP 65, ¶ 8, 25 P.3d 308, 310 ("Plaintiff cites no authority, nor do we know of any, which recognizes a cause of action in Oklahoma for retaliatory lateral reassignment or demotion."). Based on allegations contained in the Petition, Plaintiff was not terminated but transferred to another position. Although she fails to compare the two positions, the absence of additional details is not important. Even if the transfer were characterized as a demotion, such an adverse employment action does not appear to suffice for purposes of a Burk tort. Therefore, Plaintiff's state law age and gender discrimination (Burk) claims against the College and the individual Defendants are dismissed.

Plaintiff also claims that Kinzer and Tucker are liable for intentionally interfering with her prospective economic relations with the College. Although there apparently is no Oklahoma Supreme Court authority directly recognizing such a claim in the at-will employment context (see Dkt. No. 9 at 4) and Defendants assert that recognition is contrary to the principles articulated in other cases and law (see Dkt. No. 7, Defs.' Mot. at 15), lower Oklahoma courts have recognized the cause of action without hesitation. See, e.g., Gonzalez v. Sessom, 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249 (seeming to not distinguish between tortious interference with contract and prospective economic advantage); McNickle v. Phillips Petroleum Co., 2001 OK CIV APP 54, ¶¶ 18-22, 23 P.3d 949, 953-94. "Interference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit . . . ." Overbeck v. Quaker Life Ins. Co., 1984 OK CIV APP 44, ¶ 4, 757 P.2d 846, 847-48. The elements of the claim are: "(1) the existence

of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship has been disrupted." Gonzales, 2006 OK CIV APP 61, ¶ 16, 137 P.3d at 1249. "Interference includes inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation." Boyle Servs., Inc. v. Dewberry Design Group, Inc., 2001 OK CIV APP 63, ¶ 6, 24 P.3d 878, 880.

A fair reading of the Petition suggests that Kinzer and Tucker somehow were responsible for the first 2006-2007 contract not containing the promised raise and/or, in retaliation for Plaintiff's complaints, caused the amount contained in the second contract to be even lower. These allegations facially satisfy the elements identified above. Defendants contend that they cannot be liable for wrongfully interfering with Plaintiff's relationship with their principal, the College. However, Plaintiff concedes and her allegations suggest that her claim depends on Kinzer's and Tucker's alleged interference having been done outside the scope of their employment. (Dkt. No. 19, Pl.'s Resp. at 11 n.4.) Therefore, the Court cannot conclude as a matter of law that their actions were privileged.

Defendants' contention that the Oklahoma Personnel Act, 74 Okla. Stat. § 840-1.1 et seq. (the "OPA"), precludes all employment-related claims by state employees also is unpersuasive. The College's Board of Regents is statutorily created, 70 Okla. Stat. § 3702, and thus not subject to the OPA. Okla. ex rel. Bd. of Regents of Okla. St. Univ. v. Okla. Merit Prot. Comm'n, 2001 OK 17, ¶ 1, 19 P.3d 865, 866; Morehouse v. Oklahoma, 2006 OK

CIV APP 144, ¶ 4 n.6, 150 P.3d 395, 397 n.6 ("Institutions coming under the State Board of Regents are within the State Constitution's mandate of self-governing entities, so statutes such as the OPA do not apply to them."); id. at ¶¶ 13-16, 150 P.3d at 398-99.  Although the OPA remedy may preclude a Burk claim, see McCrady, 2005 OK 67, ¶¶ 11-12, 122 P.3d at 475-76, Defendants do not cite authority or explain why the OPA would preclude all intentional torts against individual supervisors.  (See Defs.' Mot. at 15-16.)  Thus, Defendants have not carried their burden of showing that Plaintiff has not stated a claim upon which relief can be granted.

But another, much debated, issue also must be mentioned.  Both sides devote a considerable portion of their briefs to a discussion of whether a common law or statutory-based qualified immunity exists and whether, based on Plaintiff's allegations, Kinzer and Tucker should be excused from defending this claim.  The existence of such an immunity is also an issue in Plaintiff's pending motion to certify and acknowledged by Defendants to be a "real question" (Dkt. No. 20 at 6).  Absent clear authority identifying the privilege and defining its parameters, dismissal under Rule 12(b)(6) on that ground is unwarranted at this time.  The Court simply cannot evaluate Plaintiff's allegations against an undefined and uncertain immunity.

## II.     Plaintiff's § 1983 Claims Against Kinzer and Tucker

In Count II, Plaintiff asserts that the allegations made show "harassment based on gender and age by a supervisory official which is a violation of Plaintiff's rights of equal protection under the law in violation of the Fourteenth [Amendment] made actionable

through 42 U.S.C. § 1983." (Pet. at 6, ¶ 29.) Defendants describe these as equal protection claims for disparate treatment based on gender and age and for retaliation. (Defs.' Mot. at 17.) They contend that such claims are preempted and invalid, and, if not, they are nevertheless entitled to qualified immunity because the law was not clearly established. The Court agrees with Defendants, in part.

Qualified immunity shields a government official performing discretionary functions from a suit for damages under § 1983 if the actions did not violate clearly established law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001). A court must also determine whether the plaintiff has shown that the law on which she relies was clearly established at the time of the defendant's actions. Id. at 923.

> The plaintiff must prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right. Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. It is not necessary, however, for plaintiffs to find a case with exact corresponding factual circumstances; defendants are required to make reasonable applications of the prevailing law to their own circumstances. In addition, contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished.

Id. (citations and quotation marks omitted).

A supervisor's sexual harassment of and discrimination against a state employee and corresponding retaliation for complaints about such discrimination violate the subordinate's right to equal protection of the law.  See Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir. 1989).  In Starrett, the evidence showed that a supervisor not only sexually harassed a female subordinate but also that her supervisor's treatment of her changed after "she spurned his advances and complained about his harassment. [Plaintiff's supervisor] began scrutinizing her work more carefully . . . , singling out her work for special review and making changes on her work cards." Id. at 815.  She was eventually fired.  The Tenth Circuit held that, based on the evidence partially summarized above, "the jury reasonably could have concluded that [the supervisor's] conduct toward plaintiff discriminated against her because of her sex and thereby deprived her of the right to equal protection of the laws." Id.  Thus, to the extent that Plaintiff alleges that Kinzer and Tucker discriminated against her because of her gender and retaliated against her because she voiced complaints about that discrimination, she states a claim upon which relief could be granted for a violation of her equal protection rights.

In addition, the notion that retaliation claims that are linked to gender constitute part of an equal protection gender discrimination claim is not novel.  See Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); see also Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005) (including retaliation for complaints as a form of "discrimination" for purposes of Title IX).  The law in this circuit was clearly established in Starrett that a supervisor's retaliation for sexual harassment and discrimination complaints was actionable as part of an equal protection claim.  Contrary to Defendants' position, Plaintiff's claims are

not necessarily "pure" retaliation claims. Therefore, Kinzer and Tucker are not entitled to qualified immunity.

The Court reaches a different conclusion with respect to the age-based equal protection claims. Plaintiff is correct that even though age is not a suspect class like race or gender, a state's arbitrary discrimination because of age may violate the Fourteenth Amendment's Equal Protection Clause. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83-84 (2000).

> States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest. The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision.

Id. at 83. However, in an employment context, the Tenth Circuit has held that there is no cognizable age discrimination claim under the Equal Protection Clause against a supervisor independent of the Age Discrimination in Employment Act of 1967 (the "ADEA").[3] Migneault v. Peck, 204 F.3d 1003, 1005 n.1 (10th Cir. 2000); see also Grizzle v. Okla. Dep't of Veterans Affairs, No. CIV-06-210-SPS, 2006 WL 3227880, at *3 n.1 (E.D. Okla. Nov. 2, 2006) ("The law in this circuit is that the ADEA preempts equal protection claims based on age discrimination under 42 U.S.C. § 1983."). At a minimum, Plaintiff has failed to show that such a right was clearly established in 2005-2006, the time of the alleged violations.

---

[3] The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Therefore, Kinzer and Tucker are entitled to qualified immunity from suit based on Plaintiff's age-based equal protection claims. Accordingly, those claims are dismissed.

### III.    Plaintiff's Title VII Age Discrimination Claims

In Count I, Plaintiff asserts claims against the College for violations of Title VII. Defendants argue that those Title VII claims cannot include discrimination and/or retaliation based on age. Defendants are correct. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Age is not identified in the statutory text. Therefore, to the extent that Plaintiff seeks to assert purely age-based claims of discrimination under Title VII, she cannot as a matter of law and such claims are dismissed.

Plaintiff indicates that she intends to assert a gender-plus claim to incorporate her allegations of ageism. The viability of such a claim has not been challenged by Defendants and is not before the Court.

### CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Dkt. No. 7) is GRANTED in part and DENIED in part. Plaintiff's gender, age discrimination, and retaliation claims against the College and individual Defendants Kinzer and Tucker, based on state law, are DISMISSED with prejudice. Plaintiff's age-based equal protection claims against individual Defendants Kinzer and Tucker are DISMISSED with prejudice. Title VII claims against the College

based solely on Plaintiff's age are DISMISSED with prejudice. All other claims asserted in the Petition, as construed in accordance with the foregoing, remain. Plaintiff is INSTRUCTED that she may seek leave to amend the Petition, in accordance with Federal and Local Rules, to add a First Amendment claim if desired. (See Pl's Resp. at 14 n.5 ("Plaintiff would seek leave to perfect this claim in connection with any order of the Court on the motion to dismiss.").)

IT IS SO ORDERED this 7th day of June, 2007.

ROBIN J. CAUTHRON
United States District Judge